DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LARRY LAMAR KOONCE III,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

No. 4D2025-0147

[June 4, 2025]

Petition for writ of certiorari to the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Caroline C. Shepherd, Judge; L.T. Case No. 2023CF006889AMB.

Daniel Eisinger, Public Defender, and Logan T. Mohs, Assistant Public Defender, West Palm Beach, for petitioner.

James Uthmeier, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for respondent.

GERBER, J.

The defendant petitions for a writ of certiorari, arguing the circuit court's procedure for appointing an expert to determine the defendant's competency to proceed departed from the essential requirements of section 916.301(1), Florida Statutes (2024). Specifically, the defendant argues the circuit court improperly appointed an expert who was not included on the Agency for Persons with Disabilities' ("APD") maintained list of appropriately licensed and qualified professionals to perform evaluations of persons alleged to be incompetent due to intellectual disability.

We disagree with the defendant's argument. Although section 916.301(1) requires that "[a]ll evaluations ordered by the court under this part **_must_** be conducted by qualified experts who have expertise in evaluating persons who have an intellectual disability," § 916.301(1), Fla. Stat. (2024) (emphases added), section 916.301(1) does not require a court to appoint _only_ an expert who is included on the APD-maintained list. Rather, section 916.301(1) pertinently provides that "courts **_may_** use

professionals from this list when appointing experts and ordering evaluations under this part."  § 916.301(1), Fla. Stat. (2024) (emphases added).  In other words, taking the entire text as a whole, while appointing "qualified experts who have expertise in evaluating persons who have an intellectual disability" is _mandatory_, appointing such experts from the APD-maintained list is _discretionary_.  As our supreme court stated in _Laboratory Corporation of America v. Davis_, 339 So. 3d 318 (Fla. 2022):

> In interpreting a statute, our task is to give effect to the words that the legislature has employed in the statutory text. "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." _Ham v. Portfolio Recovery Assocs., LLC_, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, _Reading Law: The Interpretation of Legal Texts_ 56 (2012)).  As it was long ago observed:  "The words of a statute are to be taken in their natural and ordinary signification and import; and if technical words are used, they are to be taken in a technical sense."  James Kent, Commentaries on American Law 432 (1826), quoted in Scalia & Garner, _Reading Law_ at 69 n.1.  "[T]he goal of interpretation is to arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.'"  _Ham_, 308 So. 3d at 947 (quoting Scalia & Garner, _Reading Law_ at 33).  Such a fair reading will always be mindful of the "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used."  _Deal v. United States_, 508 U.S. 129, 132, 113 S. Ct. 1993, 124 L. Ed. 2d 44 (1993).  "Context is a primary determinant of meaning."  Scalia & Garner, _Reading Law_ at 167.  Under the whole-text canon, proper interpretation requires consideration of "the entire text, in view of its structure and of the physical and logical relation of its many parts."  _Id._

_Id._ at 323–24.

Applying the "whole text" canon to section 916.301(1), the circuit court properly appointed a "qualified expert[] who ha[s] expertise in evaluating persons who have an intellectual disability" to determine the defendant's competency.  Further, the expert's competency evaluation and testimony indicate the expert had reviewed multiple materials addressing the

defendant's intellectual disability, including law enforcement's investigation records, school district records, a school district psycho-educational evaluation, and sheriff's office medical records from the defendant's detention. The expert's evaluation and testimony also indicate the expert had considered the defendant's intellectual disability in addressing each of the six enumerated competency factors: (1) an appreciation of the charges or allegations against him; (2) an appreciation of the range and nature of possible penalties that may be imposed upon him; (3) an understanding of the adversary nature of the legal process; (4) the ability to disclose facts pertinent to the proceedings to his lawyer; (5) the ability to display appropriate courtroom behavior; and (6) the ability to testify relevantly. *See* Fla. R. Crim. P. 3.211(a)(2)(A).

Based on the foregoing, the circuit court did not depart from section 916.301(1)'s essential requirements in appointing a "qualified expert[] who ha[s] expertise in evaluating persons who have an intellectual disability" to determine the defendant's competency. We therefore deny the defendant's petition for writ of certiorari.

*Petition denied.*

MAY and ARTAU, JJ., concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***